304 S.E.2d 25

**Kyle Ann SWALLOP**

v.

**The CIVIL SERVICE COMMISSION OF W.VA., et al.**

**No. 15651.**

Supreme Court of Appeals of West Virginia.

March 30, 1983.

Rehearing Denied July 5, 1983.

Kim Brown Poland, Love, Wise, Robinson & Woodroe, Charleston, for appellant.

Michael E. Froble, Asst. Atty. Gen., Charleston, for appellees.

PER CURIAM:

This is an appeal by a permanent status civil service employee, Kyle Ann Swallop, from a final order of the West Virginia Civil Service Commission affirming her dismissal from employment. For the reasons set forth below, we reverse the order.

Mrs. Swallop began working for the Department of Corrections in June of 1978 as a probation and parole officer I. She occupied that same position in January of 1982 when Governor Rockefeller ordered a spending freeze on all State agencies and

imposed on them a reduction of 10% of their appropriations for the remainder of the fiscal year. The amount for the Department of Corrections (hereinafter referred to as the Department) was $810,000.00.

In order to comply with the spending reduction, the Department laid off seven probation and parole officers. Because of the vacancies created by the lay-offs, the Department found it necessary to relocate some of the remaining officers. The appellant, who had been assigned to the Kingwood office in Preston County, received a letter dated February 5, 1982, informing her that she was being transferred to the Romney office in Hampshire County, effective February 22, 1982.

On February 19, 1982, the appellant wrote a letter to Deputy Commissioner William Whyte outlining reasons why she found the transfer order unacceptable. By letter dated February 24, 1982, Commissioner McCoy dismissed the appellant as an employee of the Department of Corrections for insubordination in refusing the transfer. The appellant was subsequently informed by the Director of Personnel of the Civil Service Commission that she had the right to appeal her dismissal to the Commission. The letter from the Commissioner did not inform her of the right to appeal although it did state that she could reply to the letter if she wished.

A hearing on the appellant's dismissal and subsequent appeal was held by the Civil Service Commission on May 18, 1982. At the hearing the Commission refused to allow evidence on the merits of the transfer decision and confined its inquiry to the dismissal issue on the basis that the transfer decision, in itself, was a matter to be contested by the grievance procedure and then appealed to the Commission. The Commission noted this fact in its final decision made at the conclusion of the taking of evidence and also held that the appellant had been insubordinate in refusing to comply with the Department's transfer order and that her insubordination was good cause for dismissal. In limiting the evidence to the insubordination issue, the Commission noted: "If we choose to get into the merits of the transfer decision on this appeal, we would be undermining our recently enacted grievance procedure. We choose not to do so." Mrs. Swallop appeals from this final decision, asserting in part, that the Commission erred in holding that she should have pursued the State personnel grievance procedure when she was unaware of the procedure and had never been supplied with a copy of it as required by the Rules and Regulations of the West Virginia Civil Service System. We agree with the appellant's assertion and reverse solely on that ground.

The grievance procedure referred to by the Commission is contained in Section 23 of the Rules and Regulations which were promulgated on October 26, 1981, to be effective December 1, 1981. The purpose is in Section 23.02:

By providing a channel for appeal, a grievance procedure guarantees all employees a "fair shake" whenever there is a possibility of improper discipline or unfair treatment. The grievance procedure aims at creating a higher level of morale for the employee and increases his sense of well-being in his work situation. Ideally, the intent is to create for all employees greater job satisfaction and greater confidence in fair treatment and to provide a legitimate outlet for employee "gripes". It is believed that a fair grievance procedure will improve the quality of communication and performance in any organization.

Section 23.01 provides that, with certain exceptions, the grievance procedure is applicable to any matter subject to the control of "agency management and which is of concern or dissatisfaction to any employee." Subsection (h) of Section 23.05 states: "The appointing authority shall furnish to each employee a copy of the currently approved Grievance Procedure."

In deciding not to address the merits of the appellant's transfer, the Commission relied exclusively on the fact that she had not used the grievance procedure available to her. At the hearing the appellant testified that she had never been informed

about the grievance procedure and that she was not aware of its existence. Matthew Foreman, Director of Administration for the Department of Corrections, admitted that the transfer order sent to the appellant did not inform her of the right to contest the transfer through the grievance procedure because it was assumed that all the employees knew about the procedure. Mr. Foreman also testified that copies of Section 23 had not been distributed in the parole offices at the time the appellant was transferred.

W. Joseph McCoy, Commissioner of the Department of Corrections, was called as a witness at the hearing. He testified that the Department followed the Civil Service Rules and Regulations, and that he was aware of the grievance procedure set out in Section 23 of those Rules and of the requirement that a copy of the procedure be distributed to all employees in the Department. The Commissioner stated that although the Department was in the process of complying with the rule by distributing copies of the grievance procedure, he did not know if the distribution had been made to the parole offices.

In *Powell v. Brown*, 160 W.Va. 723, 238 S.E.2d 220 (1977), this Court held that "[a]n administrative body must abide by the remedies and procedures it properly establishes to conduct its affairs." In *Powell* a probationary teacher who was not rehired for the ensuing year sought to avail himself of the grievance procedure that had been adopted by the county board of education and was in effect at the time he was not recommended for reemployment. We held that the teacher was entitled to the benefits of the grievance procedure and that the school board was held to "the notions of fair play and due process which they have chosen to accord employees under their own regulations." 160 W.Va. at 728, 238 S.E.2d at 222.

Other cases have also held that an administrative body must abide by the procedures it establishes. *See*, e.g., *State ex rel. Wilson v. Truby*, 167 W.Va. 179, 281 S.E.2d 231 (1981); *Trimboli v. Board of Education*, 163 W.Va. 1, 254 S.E.2d 561 (1979); *McGrady v. Callaghan*, 161 W.Va.

180, 244 S.E.2d 793 (1978). We find this principle to be dispositive of the case before us. It is clear from the record that the Department did not comply with the mandates of Section 23 of the Civil Service Rules and Regulations. The evidence shows that the appellant was not aware of the existence of the grievance procedure on her own and not having been informed of its existence, she cannot be held accountable for the failure to utilize the procedure.

We therefore conclude that the Civil Service Commission erred in refusing to judge the merits of the appellant's transfer because she had not pursued the grievance procedure. The case is remanded to the Commission for proceedings consistent with this opinion.

Reversed and remanded.